The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner, with some modification. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between the plaintiff and the defendant-employer.
3. Discovery Insurance Company is the carrier on the risk.
4. Plaintiff's average weekly wage was $453.20 yielding the compensation rate of $302.15 per week.
5. Plaintiff's medical records were stipulated into evidence and marked as Stipulated Exhibit One. These records consist of the following: three pages of documentation from Carolina Cardiology Associates; one invoice from Carolina Cardiology Associates; fifteen pages of documentation from Carolina Orthopedic Surgery; one invoice from Carolina Orthopedic Surgery; eleven pages of documentation from Metrolina Neurological Associates; one invoice from Metrolina Neurological Associates; sixteen pages of documentation from Mercy South Emergency Department; one invoice from Metrolina Imaging Group; one invoice from Charlotte Radiology; one invoice from Charlotte Emergency Physicians; thirty pages from Pineville Physical Therapy; twelve pages of documentation from South Carolina Vocational Rehabilitation; and one invoice from South Carolina Vocational Rehabilitation.
6. The issues before the Commission are the following:
 (i) Whether plaintiff suffered compensable occupational diseases pursuant to the terms and provisions of the North Carolina Workers' Compensation Act; and
 (ii) If so, to what compensation, if any, is plaintiff entitled.
***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACTS
1. At the time of the hearing before the Deputy Commissioner, plaintiff was fifty-nine years old and worked for the defendant-employer as a Licensed Practical Nurse.
2. Prior to her employment with defendant-employer, plaintiff was employed continually at numerous hospitals and retirement homes as a Licensed Practical Nurse since 1971. In all of her prior employment as a Licensed Practical Nurse, plaintiff's primary job responsibilities included administration of medications to patients, dressing wounds on patients, and preparing paperwork and other documentation reflecting patient care.
3. Plaintiff was working for Britthaven in Wrightsville Beach, North Carolina on or about October 3, 1995 as a Licensed Practical Nurse and continued in that capacity through February, 1996, at which time, plaintiff requested a transfer to Britthaven of Charlotte.
4. Plaintiff began working for the defendant-employer, Britthaven of Charlotte, on or about April 17, 1996 as a Licensed Practical Nurse.
5. Britthaven of Wilmington is a smaller unit than Britthaven of Charlotte. Plaintiff's responsibilities at Britthaven of Wilmington were less demanding than those at Britthaven of Charlotte.
6. As a Licensed Practical Nurse at Britthaven of Charlotte, plaintiff was responsible for the administration of medication to the seriously ill. Plaintiff was also responsible for providing feedings to patients and charting their medical treatment. Plaintiff pushed a cart filled with medication on her ward. The weight of this cart was approximately 15 to 28 pounds. The cart was cumbersome to operate and contained a larger number of medications than plaintiff handled at Britthaven in Wilmington.
7. From time to time, plaintiff received assistance from other nurses in performing her duties.
8. Plaintiff's normal shift was from 7:00 a.m. to 3:00 p.m. and included a 30-minute lunch break. Plaintiff also took other breaks during her work day.
9. On or about May 16, 1996, plaintiff began to experience numbness in her right arm. Plaintiff had worked overtime on this day and experienced increased pain after she left her job. Plaintiff indicated that she had numbness and tingling in her right arm and problems in her leg.
10. Plaintiff presented herself to Mercy South Hospital Emergency Room complaining of left-sided headaches, weakness and other pain. Plaintiff was given an EKG which was normal and there was no evidence of coronary artery disease.
11. Plaintiff was treated by William L. Lehman, Jr., M. D., an orthopedic surgeon in Rock Hill, South Carolina. Dr. Lehman initially examined plaintiff on May 22, 1996. Plaintiff complained of significant symptoms of numbness in the left arm which extended down her back to her left foot.
12. Dr. Lehman initially diagnosed sensory left arm radicular symptoms with probable underlying myofascial pain with mechanical back pain and radicular pain on the left.
13. Dr. Lehman referred plaintiff to Metrolina Neurological Associates for further evaluation. On May 23, 1996, plaintiff was examined by Allan S. Ryder-Cook, M. D. Plaintiff reported pain to Dr. Cook in her arm, left hip region, and face. Dr. Ryder-Cook diagnosed most of the symptoms as being consistent with fibromyalgia.
14. Plaintiff returned to Dr. Lehman for further treatment and complained of pain and numbness in her right arm.
15. Dr. Lehman diagnosed plaintiff with mild right carpal tunnel syndrome and performed a right carpal tunnel release surgical procedure on August 20, 1997.
16. On November 26, 1997, Dr. Lehman determined that plaintiff had reached maximum medical improvement with regard to her carpal tunnel syndrome which has led to the relief of symptoms of numbness in her hand. Plaintiff has also responded adequately to her diagnosis of fibromyalgia, and Dr. Lehman has recommended continued physical therapy for the fibromyalgia condition.
17. Dr. Lehman opined that he could not attribute to a reasonable degree of medical certainty plaintiff's fibromyalgia to her employment with the defendant-employer.
18. The repetitive nature of plaintiff's job which involved pushing the heavy cart with a substantial grip with the wrist extended significantly contributed to the development of plaintiff's carpal tunnel syndrome.
19. Plaintiff's employment with Britthaven of Charlotte placed her at an increased risk of developing carpal tunnel syndrome as compared to members of the general public.
20. It is yet to be determined what, if any, permanent partial disability plaintiff may have sustained as a result of her acquisition of carpal tunnel syndrome.
21. There is insufficient evidence of record from which to determine by its greater weight that plaintiff's fibromyalgia was caused by or related to her employment with defendant-employer. Further, there is insufficient evidence to determine by its greater weight that plaintiff was at an increased risk of developing fibromyalgia from her employment with defendant-employer.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's carpal tunnel syndrome was due to causes and conditions characteristic of and peculiar to her employment with defendant-employer, is not an ordinary disease of life to which the general public not so employed is equally exposed, and is, therefore, an occupational disease. N.C. Gen. Stat. §97-53(13).
2. As a result of her contraction of a compensable occupational disease, plaintiff is entitled to temporary total disability compensation at a rate of $302.15 per week from May 17, 1996 through November 26, 1997. N.C. Gen. Stat. § 97-29.
3. Defendant is obligated to provide to plaintiff such medical treatment as is reasonably required as a result of her occupational disease to effect a cure, give relief or lessen plaintiff's disability. N.C. Gen. Stat. §§ 97-25; 97-59.
4. It is yet to be determined what, if any, permanent partial disability plaintiff may have sustained as a result of her acquisition of carpal tunnel syndrome. N.C. Gen. Stat. §97-31.
5. Plaintiff's fibromyalgia is not an occupational disease caused by or related to conditions which are characteristic and peculiar to plaintiff's employment with defendant-employer; therefore, plaintiff is not entitled to any compensation for her fibromyalgia pursuant to the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-53(13).
***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For the compensable contraction of an occupational disease, carpal tunnel syndrome, defendants shall pay plaintiff temporary total disability compensation at the rate of $302.15 per week from May 17, 1996 through November 26, 1997.
2. Defendants shall pay all reasonable medical expenses incurred or to be incurred in the future by plaintiff as a result of her compensable occupational disease when bills for the same have been submitted through the defendants and approved according to procedures adopted by the Industrial Commission.
3. Unless the parties can agree on the amount of permanent partial disability, if any, sustained as a result of plaintiff's contraction of an occupational disease, the parties shall schedule an appointment within sixty (60) days of the filing of this Opinion and Award for the plaintiff to be examined at a reasonable time and place by William L. Lehman, Jr., M.D. for that purpose. The costs of the examination shall be born by the defendants. In the event that the parties are unable to agree as to the amount of the permanent partial disability, either party may then file an Industrial Commission Form 33 Request That The Claim Be Assigned for Hearing.
4. Defendants shall pay the costs.
This the ___ day of May 1999.
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
LKM/jth